**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LEISURE INVESTMENTS HOLDINGS LLC, *et al.*,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 25-10606 (LSS)<br><br>(Jointly Administered) |
| GULF WORLD MARINE PARK, INC; EJECUTIVOS DE TURISMO SUSTENTABLE S.A. DE C.V.; CONTROLADORA DOLPHIN, S.A. DE C.V.; MS LEISURE COMPANY; THE DOLPHIN CONNECTION, INC.,<br><br>               Plaintiffs,<br>v.<br><br>ELYSIUM PROPERTIES INVESTMENTS INC., ELYSIUM AD, LLC, JADE RESIDENCES AT BRICKELL BAY CONDOMINIUM ASSOCIATION, INC., PNC BANK, NATIONAL ASSOCIATION,<br><br>               Defendants. | Adv. Pro. No. _____ (LSS)<br><br><br><br>**COMPLAINT FOR (I) AVOIDANCE AND RECOVERY OF TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 548, 549, AND 550, AND APPLICABLE STATE LAW, (II) INJUNCTIVE RELIEF AND IMPOSITION OF A CONSTRUCTIVE TRUST, (III) UNJUST ENRICHMENT, AND (IV) RELATED RELIEF** |

Debtor-Plaintiffs Gulf World Marine Park, Inc., Ejecutivos de Turismo Sustentable SA de

CV, Controladora Dolphin, S.A. de C.V., MS Leisure Company, and The Dolphin Connection,

Inc. (collectively, the "**Plaintiffs**") file this complaint (the "**Complaint**") against Elysium

---

[1] Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors is not provided herein.  A complete list of the Debtors along with the last four digits of their tax identification numbers, where applicable, may be obtained on the website of the Debtors' noticing and claims agent at https://veritaglobal.net/dolphinco, or by contacting counsel for the Debtors.  For the purposes of these chapter 11 cases, the address for the Debtors is Leisure Investments Holdings LLC, c/o Riveron Management Services, LLC, 600 Brickell Avenue, Suite 2550, Miami, FL 33131.

Properties Investments, Inc. ("**Elysium, Inc.**"), Elysium AD, LLC ("**Elysium AD**"), Jade Residences at Brickell Bay Condominium Association, Inc. ("**Jade**"), and PNC Bank, National Association ("**PNC**" and together with Elysium, Inc., Elysium AD, and Jade, the "**Defendants**"). In support thereof, the Plaintiffs allege upon knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION[2]

1. The Debtors' review of banking and other records has revealed that a significant amount of funds have been siphoned away from the Plaintiffs and non-debtor affiliates—before and after the Chapter 11 Cases were commenced—and transferred to Elysium, Inc., which, in turn, sent payments to PNC and Jade to pay the mortgage and HOA/property management fees, respectively, for a luxury high-rise penthouse apartment located at 1331 Brickell Bay Drive, Apt. 4605, Miami, Florida 33131-3688 (the "**Penthouse**"). Elysium AD, a Delaware limited liability company, is the owner of the Penthouse and borrower under the Mortgage Note. Both Elysium AD and Elysium, Inc. are owned and controlled by none other than Eduardo Albor.

2. These unlawful pre- and post-petition transfers of the Plaintiffs' funds (i) were made to benefit non-debtor entities owned and controlled by an insider, (ii) provided no benefits or value to the Plaintiffs, (iii) were made at a time when the Plaintiffs were insolvent or undercapitalized, (iv) were made with the actual intent to hinder, delay, or defraud creditors of the Plaintiffs, and (v) unjustly enriched certain Defendants to the detriment of the Plaintiffs. To the extent discovery reveals additional funds were unlawfully swiped from the Plaintiffs or other Debtors to pay the mortgage and other costs associated with the Penthouse, the Plaintiffs will

---

[2] Capitalized terms used but not defined in this introductory section have the meanings ascribed to them in the body of the Complaint.

also seek to avoid and recover such transfers (or the value thereof) for the benefit of their creditors.

3.      The Debtors have also discovered that Elysium AD now intends to sell the Penthouse and has engaged a broker to facilitate the sale (the "**Sale**").  Given that the Plaintiffs' (and potentially other Debtors') funds were unlawfully used to pay down the Mortgage Note and cover HOA and property management fees associated with the Penthouse, the Plaintiffs seek equitable relief, including the issuance of a preliminary injunction and the imposition of a constructive trust with respect to the Sale proceeds in excess of the remaining principal balance owed under the Mortgage Note.  This equitable relief would ensure that the excess proceeds would be placed into an escrow account pending an accounting and the adjudication of the disputes relating to the funds siphoned away from the Plaintiffs (and potentially other Debtors) to pay the mortgage and other costs associated with the Penthouse.  The requested equitable relief would also maintain the status quo to allow the Plaintiffs to determine whether any Debtor funds were used by or on behalf of Elysium AD for the down payment to purchase the Penthouse.

4.      The Plaintiffs therefore seek entry of judgment against the Defendants, as applicable: (i) avoiding and recovering the Transfers as actually fraudulent and/or constructively fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548, 550, and applicable state law; (ii) avoiding and recovering the Post Commencement Date Transfers (defined below) pursuant to 11 U.S.C. §§ 549 and 550; (iii) for violating the automatic stay on account of the Post Commencement Date Transfer; (iv) granting the Plaintiffs a preliminary injunction with respect to the proceeds from the Sale in excess of the remaining principal balance under the Mortgage Note and imposing a constructive trust to hold the excess proceeds in escrow pending further order of the Court; (v) requiring an accounting of any and all transfers of funds to purchase the

60091993

Penthouse, pay down the Mortgage Note, pay the property management fees for the Penthouse, and pay any other costs associated with the Penthouse; (vi) for unjust enrichment; and (vii) any additional relief the Court deems just and proper.

**PARTIES**

5.      Gulf World Marine Park, Inc. ("**GWMP**") is a Florida corporation and a debtor in the above-captioned chapter 11 proceedings (the "**Chapter 11 Cases**") pending in the Bankruptcy Court for the District of Delaware (the "**Court**").

6.      Ejecutivos de Turismo Sustentable S.A. de C.V. ("**ETS**") is a *Sociedad Anónima de Capital Varibale* registered in Mexico and a debtor in the Chapter 11 Cases.

7.      Controladora Dolphin, S.A. de C.V. ("**Controladora**") is a *Sociedad Anónima de Capital Varibale* registered in Mexico and a debtor in the Chapter 11 Cases.

8.      MS Leisure Company ("**MS Leisure**") is a Florida corporation and a debtor in the Chapter 11 Cases.

9.      The Dolphin Connection, Inc. ("**Dolphin Connection**") is a Florida corporation and a debtor in the Chapter 11 Cases.

10.     Upon information and belief, Elysium Inc. is a corporation organized under the laws of Barbados.

11.     Elysium AD is a limited liability company organized under the laws of Delaware.

12.     Jade is a not-for-profit corporation incorporated under the laws of Florida.

13.     PNC is a national banking association whose main office, as designated in its articles of association, is in the state of Delaware, and its principal place of business is in the Commonwealth of Pennsylvania.

60091993

**JURISDICTION AND VENUE**

14.     The Court has jurisdiction over the claims raised in the Complaint pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* issued by the United States District Court for the District of Delaware on February 29, 2012.

15.     The Adversary Proceeding arises under Title 11 and is commenced pursuant to sections 544, 548, 549, and 550 of the Bankruptcy Code and Bankruptcy Rules 7001 and 7008.

16.     Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

17.     This is a core proceeding pursuant to 28 U.S.C. § 157(b) such that the Court may enter final judgment and orders consistent with Article III of the United States Constitution. Pursuant to Rule 7012-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Plaintiffs consent to the entry of final judgement and orders by the Court with respect to the Complaint to the extent it is later determined that the Court, absent consent of the parties, cannot enter final judgement and orders in this Adversary Proceeding consistent with Article III of the United States Constitution.

**FACTUAL BACKGROUND**

A.     **General Background**

18.     The Debtors operated recreational attractions focused on dolphin and other live animal encounters at over thirty locations in eight countries.

19.     Between 2015 and 2022, the Debtors embarked on a rapid plan of global expansion through acquisition. The Debtors acquired twenty habitats and parks, including locations in the United States, Italy, and Argentina.  In 2015 alone, the Debtors spent over $76 million executing this plan.

20.     Certain of the Debtors entered into financing arrangements including that certain *Second Amended and Restated Note Purchase and Guarantee Agreement*, dated as of June 27,

60091993

2022 (which amended and restated that certain *Note Purchase and Guarantee Agreement*, dated as of April 8, 2019, as amended, and that certain *Amended and Restated Note Purchase and Guarantee Agreement*, dated as of June 8, 2020, as amended, and as further amended, modified, amended and restated or supplemented from time to time prior to the date hereof, the "**Prepetition First Lien NPA**"), and that certain *Second Lien Note Purchase and Guarantee Agreement*, dated as of June 27, 2022 (as amended, modified, amended and restated or supplemented from time to time prior to the date hereof, the "**Prepetition Second Lien NPA**," and together with the Prepetition First Lien NPA, the "**Prepetition NPAs**").

21.     The Prepetition First Lien NPA provided for the issuance by Controladora of $100 million of Guaranteed Senior Secured Notes (the "**Prepetition First Lien Notes**").  The Prepetition First Lien NPA was guaranteed by each of the Debtors (other than Controladora) through first priority liens on substantially all of the Debtors' assets.

22.     The Prepetition Second Lien NPA provided for the issuance by Triton Investments Holdings LLC (another Debtor entity), of (i) $75 million of Second Lien Guaranteed Secured Floating Rate Series A Notes and (ii) $3 million of Second Lien Guaranteed Secured Floating Rate Series A PIK Notes (the "**Prepetition Second Lien Notes,**" and together with the Prepetition First Lien Notes, the "**Prepetition Notes**").  The Prepetition Second Lien NPA was guaranteed by each of the Debtors (other than Triton Investments Holdings LLC) through second priority liens on substantially all of the Debtors' assets.

23.     By 2023, the Debtors' financial performance had weakened significantly, and in October of 2023, the Debtors began missing payments due under the Prepetition First Lien Notes.  Despite the lenders' efforts to propose restructuring alternatives, the Debtors remained in

60091993

default, missing both payments and covenants required under the Prepetition Notes and Prepetition NPAs in the fourth quarter of 2023 and the first quarter of 2024.

24.     At around the same time, the Debtors were failing to meet other key financial obligations, including rent, professional fees, and payroll.

25.     On March 7, 2024, Miami-Dade County served the Debtors an eviction notice citing material violations of the lease agreement for one of the Debtors' properties in Miami, Florida, the Miami Seaquarium.

26.     On May 17, 2024, the lenders to the Prepetition First Lien NPA sent the Debtors a formal letter notifying them of defaults that had occurred and were continuing.  By August 2024, the Debtors had accumulated more than seventeen defaults under the Prepetition Notes and the Prepetition NPAs.

27.     On October 30, 2024, the lenders formally notified the Debtors that no new funding under the Prepetition First Lien NPA would be provided due to the continuing defaults.

28.     On November 14, 2024, the Prepetition First Lien NPA lenders sent an additional letter to the Debtors noting that the Debtors had taken no meaningful steps to address the numerous continuing defaults.

**B.     The Chapter 11 Cases**

29.     On March 31, 2025 (the "**Commencement Date**"), certain of the Debtors, including GWMP, Dolphin Connection, MS Leisure, and ETS, filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code.  Controladora filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code on April 16, 2025.  The Chapter 11 Cases are being jointly administered for procedural purposes only.  *See* Docket Nos. 32 & 68.[3]

---

[3] Citations to "Docket __" refer to the main chapter 11 case identified in the above caption.

30.     As of the Commencement Date, the Debtors and certain other entities had principal outstanding debt obligations in the amount of approximately $100,000,000, plus approximately $16,238,643 in accrued interest and additional fees and substantial costs pursuant to the Prepetition First Lien Notes, and principal outstanding debt obligations of approximately $105,951,075, plus interest, fees and costs, pursuant to the Prepetition Second Lien Notes.

31.     In addition to the Prepetition Notes, the Debtors and certain other entities were also obligors under twelve known bilateral debt instruments.

32.     The Schedules of Assets and Liabilities for each of the Plaintiffs (other than Controladora) reflect that their respective liabilities far exceeded the value of their assets as of the Commencement Date.  *See* Docket Nos. 418, 420, 428, and 430.  The Schedules of Assets and Liabilities for Controladora reflect that its liabilities far exceeded the value of its assets as of April 16, 2025.  *See* Docket No. 431.

33.     Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of the Chapter 11 Cases, are set forth in detail in the *Declaration of Steven Robert Strom in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 10], which is incorporated herein by reference.

**C.     The Mortgage Note and the Penthouse**

34.     Elysium AD purchased the Penthouse using proceeds from a Fixed/Adjustable Rate Note (Number 6735130003) entered into by and between Compass Bank and Elysium AD, dated February 10, 2016 (the "**Mortgage Note**").[4]  Below is an excerpt of the Mortgage Note.

---

[4] The Plaintiffs believe and understand that PNC acquired Compass in 2021 and that PNC is the current mortgagee with respect to the Mortgage Note.

60091993

Loan Number: **6735130003**

# FIXED/ADJUSTABLE RATE NOTE
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)–Rate Caps)
**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**February 10, 2016**                           **MIAMI, FLORIDA**
                                  **1331 BRICKELL BAY DRIVE APT. 4605**
                                          **MIAMI, FL 33131**
                                          (Property Address)

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. **$2,000,000.00** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **COMPASS BANK**. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

35.     Jade provides property management services (or ensures that such services are provided) for the building in which the Penthouse is located.  Jade is owed a monthly fee by tenants of the building for homeowners association (HOA) and property management services.

36.     Former directors and officers of the Plaintiffs, including Eduardo Albor, were and/or remain to be directors or officers of Elysium Inc. and Eduardo Albor is the Manager and a member of Elysium AD.

**D.     The Plaintiffs' Funds Were Siphoned to Pay the Mortgage Note and Other Costs Associated With the Penthouse**

37.     Elysium Inc. and Elysium AD, at the direction of their owner and controller or others acting on his behalf, siphoned money from the Plaintiffs (and potentially other Debtors and non-debtor affiliates) for several years.  The Debtors have not yet been able to determine whether Debtor property was used by or on behalf of Elysium AD to fund the down payment for the Penthouse, however, the Plaintiffs understand that Debtor funds were used to pay down the Mortgage Note and make payments for HOA fees and other costs associated with the Penthouse.

60091993
9

a.  **Transfers to the PNC Checking Account Held by Elysium, Inc.**

38.     The Debtors' review of banking and other records for January 1, 2024 through January 31, 2025 revealed that, prior to the Commencement Date, Elysium Inc., through its representatives, caused one or more of the Plaintiffs and non-debtor affiliates to transfer a significant amount of funds to a business checking plus account at PNC ending –9136, held by Elysium Inc. (the "**PNC Business Checking Account**").

39.     There was no legitimate business purpose of the Plaintiffs for the transfers of the Plaintiffs' funds to the PNC Business Checking Account.  The pre-petition transfers caused to be made to Elysium, Inc. from the Plaintiffs are collectively referred to as the "**Transfers**."

40.     Specifically, banking records in the Debtors' possession with respect to the PNC Business Checking Account reflect that GWMP made transfers on at least four (4) occasions (totaling nearly $50,000) into the PNC Business Checking Account.  Below is an excerpt from a PNC Business Checking Account statement evidencing these transfers.

### Deposits and Other Additions

#### ACH Additions

| Date posted | Amount | Transaction description |
|---|---|---|
| 07/02 | 19,792.31 | Reverse ACH Debit Effective  07-01-24 |
| 07/08 | 10,000.12 | ACH Credit Direct Dep Gulf World Marin XXXXXXXXX1417Mh |
| 07/15 | 18,641.00 | ACH Credit Direct Dep Gulf World Marin XXXXXXXXX3697Mh |

41.     A chart of the transfers from GWMP to the PNC Business Checking Account, as reflected in the PNC Business Checking Account records available to the Debtors, is included below.

60091993

10

| Transfer Date | Transfer Amount | Transferor | Transferee |
| --- | --- | --- | --- |
| 5/5/2024 | $10,000.11 | GWMP | Elysium Inc. |
| 7/8/2024 | $10,000.12 | GWMP | Elysium Inc. |
| 7/15/2024 | $18,641.00 | GWMP | Elysium Inc. |
| 9/4/2024 | $10,000.11 | GWMP | Elysium Inc. |

42.     Within that same time period of January 1, 2024 through January 31, 2025, Elysium, Inc. also received transfers of Debtor property from other Debtors (or their affiliates that, upon information and belief, should have been transferred to Debtors), including MS Leisure, Dolphin Connection, Dtraveller Limited, Tours R' Us, Dolphin Cove Limited, and World of Dolphin, Inc., totaling hundreds of thousands of dollars.

**b.     Payments to PNC Regarding the Mortgage Note**

43.     The Debtors' review of available bank records for January 1, 2024 through January 31, 2025 revealed that Elysium Inc., through its controllers or other representatives, engaged in at least twenty-two ACH transfers to or from a PNC mortgage account relating to the Mortgage Note, bearing account number ending –7266 (the "**PNC Mortgage Account**").  Below is an excerpt from an account statement evidencing these transfers.

**ACH Deductions**

| Date posted | Amount | Transaction description |
| --- | --- | --- |
| 07/01 | 19,792.31 | ACH Debit PNC Pymt PNC Mortgage XXXXXX7266 |
| 07/02 | 19,792.31 | ACH Debit Retry Pymt PNC Mortgage XXXXXX7266 |
| 07/05 | 5,344.81 | ACH Web Web Pmts Jade Residences Jn3Tp |

44.     A chart of the known transfers to the PNC Mortgage Account is included below.

60091993

11

| Transfer Date | Transfer Amount | Transferor | Transferee |
|---|---|---|---|
| 1/2/2024 | $15,428.71 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 2/1/2024 | $15,428.71 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 2/2/2024 | ($15,428.71) | | Reversal of 2/1/2024 Transfer |
| 2/2/2024 | $15,428.71 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 2/5/2024 | ($15,428.71) | | Reversal of 2/2/2024 Transfer |
| 3/1/2024 | $15,428.71 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 4/1/2024 | $15,428.71 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 5/1/2024 | $17,853.90 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 6/3/2024 | $19,792.31 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 7/1/2024 | $19,792.31 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 7/2/2024 | ($19,792.31) | | Reversal of 7/1/2024 Transfer |
| 7/2/2024 | $19,792.31 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 8/1/2024 | $19,792.31 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 9/3/2024 | $19,792.31 | Elysium Inc. | PNC (for the benefit of Elysium AD) |

60091993

| | | | |
|---|---|---|---|
| 9/4/2024 | ($19,792.31) | | Reversal of 9/3/2024 Transfer |
| 9/4/2024 | $19,792.31 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 10/1/2024 | $19,792.31 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 10/2/2024 | ($19,792.31) | | Reversal of 10/1/2024 Transfer |
| 10/2/2024 | $19,792.31 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 11/1/2024 | $19,792.31 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 12/1/2024 | $19,792.31 | Elysium Inc. | PNC (for the benefit of Elysium AD) |
| 1/2/2025 | $19,475.05 | Elysium Inc. | PNC (for the benefit of Elysium AD) |

**c.      Payments to Jade for Costs Associated With the Penthouse**

45.      Jade is the condominium association for the building in which the Penthouse is located.  Jade charges monthly fees for HOA and property management services provided to the tenants of the building.

46.      The Debtors' review of available bank records for January 1, 2024 through January 31, 2025 revealed that Elysium Inc., at the direction of the owner or controller of Elysium, Inc. and Elysium AD or others acting on his behalf, engaged in at least sixteen (16) ACH transfers to or from an account held by Jade (the "**Jade Account**").  Below is an excerpt from an account statement evidencing these transfers.

47.      A chart of the known transfers to the Jade Account is included below.

60091993

| Transfer Date | Transfer Amount | Transferor | Transferee |
|---|---|---|---|
| 1/5/2024 | $5,344.81 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
| 1/8/2024 | ($5,344.81) | | Reversal of 1/5/2024 Transfer |
| 2/5/2024 | $10,719.62 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
| 3/5/2024 | $5,344.81 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
| 3/6/2024 | ($5,344.81) | | Reversal of 3/5/2024 Transfer |
| 4/5/2024 | $10,996.86 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
| 5/6/2024 | $5,344.81 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
| 6/5/2024 | $5,344.81 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
| 7/5/2024 | $5,344.81 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
| 8/5/2024 | $5,344.81 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
| 9/5/2024 | $5,344.81 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
| 10/7/2024 | $5,344.81 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
| 11/5/2024 | $5,344.81 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
| 12/5/2024 | $5,344.81 | Elysium Inc. | Jade (for the benefit of Elysium AD) |

| 1/6/2025 | $8,529.55 | Elysium Inc. | Jade (for the benefit of Elysium AD) |
|---|---|---|---|
| 1/7/2025 | ($8,529.55) | | Reversal of 1/6/2025 Transfer |

**d.    Amicorp Inquired About the Mortgage Note, the Penthouse, and the Transfers**

48.    Based on the Debtors' review of historical company records, the Plaintiffs understand that Amicorp Barbados Limited (**"Amicorp"**) provided accounting and tax services for Elysium, Inc.  Amicorp also provided accounting and tax services to debtor Controladora prior to date it sought chapter 11 relief.

49.    The records show that Amicorp requested information from Elysium, Inc. about the Mortgage Note, the Penthouse, and the transfers associated with, among other things, the payment of the Mortgage Note and property management fees.

50.    Upon information and belief, Elysium, Inc. was either delinquent in providing the requested information or refused to provide the requested information.

51.    Regardless, in June 2024, Amicorp informed Elysium, Inc. that Amicorp would be unable to fulfill the annual obligation for Elysium, Inc. with regard to the submission of Elysium, Inc.'s corporate tax returns due, in part, to the absence of requested information.

52.    Upon information and belief, the pre-petition ACH debit payments to the PNC Mortgage Account and to Jade were funded, at least in part, by the Transfers caused to be made by the Plaintiffs to Elysium, Inc.

**e.    Unauthorized Post-Petition Transfer(s) of Debtor Property**

53.    Elysium, Inc. continued to receive transfers of Debtor property post-Commencement Date.  The Debtors are currently aware of one such post-petition transfer—a

60091993

$35,000.00 transfer on May 8, 2025 from debtor ETS to Elysium, Inc.'s PNC Business Checking Account (the "**ETS Post Commencement Date Transfer**"). This post-petition transfer was not authorized by the Court or by the Bankruptcy Code.

54.    Below is an excerpt from an account statement evidencing this post-petition transfer.

55.    Bank records from other non-debtor affiliates of the Debtors indicate that Elysium, Inc. and Elysium AD also received post-petition transfers from at least three non-debtor subsidiaries of debtor Controladora (including DTraveller Limited, Tours R' Us Limited, and World of Dolphins, Inc.). Those transfers would otherwise have been sent to debtor Controladora in the ordinary course of the business dealings between Controladora and its non-debtor subsidiaries.

56.    Specifically, bank records indicate that, between April 2025 and June 2025, Elysium, Inc. received approximately $397,000 from non-debtor subsidiaries.

57.     The ETS Post Commencement Date Transfer, and the post-petition transfers from non-debtor subsidiaries of Controladora to Elysium, Inc.'s PNC Business Checking Account are collectively referred to as the "**Post Commencement Date Transfers**."

58.     A chart of the known Post Commencement Date Transfers to the PNC Business Checking Account is included below.

| Transfer Date | Transfer Amount | Transferor | Transferee |
|---|---|---|---|
| 4/1/2025 | $8,079.00 | Tours R' Us Limited | Elysium Inc. |
| 4/25/2025 | $15,070.00 | DTraveller Limited | Elysium Inc. |
| 4/29/2025 | $9,579.00 | Tours R' Us Limited | Elysium Inc. |
| 4/29/2025 | $10,070.00 | DTraveller Limited | Elysium Inc. |
| 4/30/2025 | $2,079.00 | Tours R' Us Limited | Elysium Inc. |
| 5/1/2025 | $15,070.02 | DTraveller Limited | Elysium Inc. |
| 5/6/2025 | $12,070.00 | Tours R' Us Limited | Elysium Inc. |
| 5/7/2025 | $55,094.00 | Tours R' Us Limited | Elysium Inc. |
| 5/9/2025 | $6,079.00 | Tours R' Us Limited | Elysium Inc. |
| 5/9/2025 | $17,070.00 | DTraveller Limited | Elysium Inc. |
| 5/9/2025 | $36,070.00 | World of Dolphins, Inc. | Elysium Inc. |
| 5/13/2025 | $78,594.00 | Tours R' Us Limited | Elysium Inc. |
| 5/23/2025 | $20,070.00 | DTraveller Limited | Elysium Inc. |
| 5/30/2025 | $10,070.00 | DTraveller Limited | Elysium Inc. |

60091993

59.     The Post Commencement Date Transfers occurred prior to this Court's entry of its June 5, 2025 *Order (I) Enforcing (A) the Automatic Stay and (B) the Court's Order Compelling Debtors' Former Officers and Other Required Persons to Turn Over Records, and (II) Granting Related Relief* [Docket No. 205], and prior to the date that the Plaintiffs' present management was able to wrest control of operations from prior management.

60.     Upon information and belief, some of the Transfers and Post Commencement Date Transfers were made after employees of the Plaintiffs received threats by directors and/or officers of Elysium, Inc.

61.     Upon information and belief, the Transfers were made with the actual intent to hinder, delay, or defraud the Plaintiffs' creditors based on, among other things, the following factors:

(1) the Transfers were made in furtherance of a scheme to benefit Elysium, Inc. and/or Elysium AD;

(2) the Mortgage Note was not recorded on any of the Plaintiffs' books and records as a debt;

(3) the amounts owed or paid to Jade were not recorded on any of the Plaintiffs' books and records as a debt;

(4) the Penthouse was not recorded on any of the Plaintiffs' books and records as an asset;

(5) the Transfers enabled Elysium, Inc. to receive far more than it would in a liquidation of the Plaintiffs' assets;

(6) the Transfers enabled Elysium AD to receive far more than it would in a liquidation of the Plaintiffs' assets;

60091993

18

(7) the Transfers enabled Jade to receive far more than it would in a liquidation of the Plaintiffs' assets;

(8) the Transfers enabled PNC to receive far more than it would in a liquidation of the Plaintiffs' assets;

(9) the value of the consideration the Plaintiffs received, if any, in exchange for the Transfers was not reasonably equivalent to the value of the Transfers; and

(10) the Plaintiffs were insolvent or became insolvent shortly after the Transfers were made and/or were undercapitalized at the time of the Transfers.

62.     The Post Commencement Date Transfers were transfers of the Plaintiffs' property and were not authorized by the Court or under the Bankruptcy Code.  That unauthorized post-petition transfers are thus subject to avoidance and recovery under sections 549 and 550 of the Bankruptcy Code.

63.     The Plaintiffs commence this Adversary Proceeding to avoid and recover for the Plaintiffs' estates the Transfers made to or for the benefit of the applicable Defendant and to avoid and recover the unauthorized Post Commencement Date Transfers of Debtor property. The Plaintiffs may also learn that Debtor property was used to make the down payment for the Penthouse and reserve all rights with respect to any such transfer(s).

64.     The Penthouse is now up for Sale, risking the dissipation and/or further disposition of estate property and funds that are subject to avoidance and recovery for the benefit of the Plaintiffs' estates.

65.     The risk of dissipation and/or further disposition of estate property is not speculative.  As briefed previously in these Chapter 11 Cases, Eduardo Albor—a director and owner of the Elysium entities—has on several occasions misappropriated estate property.[5]  The Plaintiffs cannot idly sit back and watch the same thing happen yet again.

66.     Accordingly, in the interim, the Plaintiffs seek equitable relief, including: (i) the issuance of a preliminary injunction prohibiting the Defendants and their agents, including any title company involved in the Sale, from transferring or disposing of any proceeds from the Sale that are in excess of the remaining principal balance owed under the Mortgage Note and any reasonable and necessary costs payable to third-parties to close the Sale (such remaining proceeds are the "**Excess Proceeds**"), and (ii) the imposition of a constructive trust with respect to the Excess Proceeds and the placement of such funds in escrow pending an accounting and further order of the Court.

**FIRST CLAIM**
**(Against Elysium, Inc, Elysium AD, Jade, and PNC)**
**Avoidance of Fraudulent Transfer – 11 U.S.C. §§ 544, 548(a)(1)(A);**
**6 Del. Code § 1304(a)(1) and Fla. Stat. § 726.105(1)(a)**
**(Actual Fraudulent Transfers)**

67.     The Plaintiffs reallege and incorporate all preceding paragraphs as if fully set forth herein.

68.     Each of the Transfers were transfers of an interest of the Plaintiffs in property.

69.     The Plaintiffs did not receive reasonably equivalent value for any of the Transfers.

70.     The Transfers were concealed from the Debtors' creditors and enabled Elysium, Inc. and Elysium AD to pay down the Mortgage Note and pay costs associated with the

---

[5] *See Debtors' Motion for Entry of an Order (I) Enforcing (A) the Automatic Stay and (B) the Court's (1) Turnover Order and (2) Stay Enforcement Order, and (II) Granting Related Relief* [Docket No. 332].

60091993

Penthouse.  The Transfers ultimately benefited the owner and controller of both Elysium, Inc. and Elysium AD.

71.    At the time of the Transfers, each of the Plaintiffs was insolvent.

72.    Each of the Transfers to the PNC Business Checking Account are avoidable transfers under section 548 of the Bankruptcy Code, section 1304(a)(1) of the Delaware Code, and/or section 726.105(1)(a) of the Florida Statutes because they were made on or within two years before the Commencement Date and were made with the actual intent to hinder, delay, or defraud entities to which the Plaintiffs were or became indebted to on or after the date the Transfers were made.

73.    In the alternative, to the extent that PNC is determined to be the initial transferee with respect to any of the Transfers used to pay down the Mortgage Note, then such Transfers to the PNC Mortgage Account or other account(s) are avoidable transfers under section 548 of the Bankruptcy Code, section 1304(a)(1) of the Delaware Code, and/or section 726.105(1)(a) of the Florida Statutes because they were made on or within two years before the Commencement Date and were made with the actual intent to hinder, delay, or defraud entities to which the Plaintiffs were or became indebted to on or after the date the Transfers were made.

74.    In the alternative, to the extent that Jade is determined to be the initial transferee with respect to any of the Transfers used to pay Jade the HOA and property management fees associated with the Penthouse, then such Transfers to the Jade Account or other account(s) are avoidable transfers under section 548 of the Bankruptcy Code because they were made on or within two years before the Commencement Date and were made with the actual intent to hinder, delay, or defraud entities to which the Plaintiffs were or became indebted to on or after the date the Transfers were made.

60091993

21

75.     The Transfers are avoidable by the Plaintiffs pursuant to section 548(a)(i)(A) of the Bankruptcy Code and applicable state law.  Pursuant to section 550(a) of the Bankruptcy Code, the Plaintiffs are entitled to recover any avoided Transfers, or the value thereof, from the applicable Defendant plus interest thereon to the date of payment and the costs of this action.

**SECOND CLAIM**
**(Against Elysium Inc, Elysium AD, Jade, and PNC)**
**Avoidance of Fraudulent Transfer – 11 U.S.C. §§ 544, 548(a)(1)(B);**
**6 Del. Code § 1305 and Fla. Stat. 726.105(1)(b), 726.106**
**(Constructively Fraudulent Transfers)**

76.     The Plaintiffs reallege and incorporate all preceding paragraphs as if fully set forth herein.

77.     Each of the Transfers were transfers of an interest of the Plaintiffs in property made within the two-year period before the Commencement Date.

78.     The Plaintiffs did not receive reasonably equivalent value for any of the Transfers.

79.     The Transfers were concealed from the Debtors' creditors and enabled Elysium, Inc. and Elysium AD to pay down the Mortgage Note and pay costs associated with the Penthouse.  The Transfers ultimately benefited the owner and controller of both Elysium, Inc. and Elysium AD.

80.     At the time of the Transfers, each of the Plaintiffs were insolvent, became insolvent as a result of the Transfers, or were undercapitalized.

81.     Each of the Transfers to the PNC Business Checking Account are therefore avoidable transfers under section 548(a)(1)(B) of the Bankruptcy Code, section 1305 of the Delaware Code and section 726.105(1)(b), and/or 726.106 of the Florida Statutes because (i) they were transfers of an interest of the Plaintiffs in property made within the two-year period

before the Commencement Date, (ii) the Plaintiffs did not receive reasonably equivalent value for any of the Transfers, and (iii) at the time of the Transfers, each of the Plaintiffs were insolvent, became insolvent as a result of the Transfers, or were undercapitalized.

82.     In the alternative, to the extent that PNC is determined to be the initial transferee with respect to any of the Transfers used to pay down the Mortgage Note, then such Transfers to the PNC Mortgage Account or other account(s) are avoidable transfers under section 548(a)(1)(B) of the Bankruptcy Code, section 1305 of the Delaware Code and section 726.105(1)(b), and/or 726.106 of the Florida Statutes because (i) they were transfers of an interest of the Plaintiffs in property made within the two-year period before the Commencement Date, (ii) the Plaintiffs did not receive reasonably equivalent value for any of the Transfers, and (iii) at the time of the Transfers, each of the Plaintiffs were insolvent, became insolvent as a result of the Transfers, or were undercapitalized.

83.     In the alternative, to the extent that Jade is determined to be the initial transferee with respect to any of the Transfers used to pay Jade the HOA and property management fees associated with the Penthouse, then such Transfers to the Jade Account or other account(s) are avoidable transfers under section 548(a)(1)(B) of the Bankruptcy Code, section 1305 of the Delaware Code and section 726.105(1)(b), and/or 726.106 of the Florida Statutes because (i) they were transfers of an interest of the Plaintiffs in property made within the two-year period before the Commencement Date, (ii) the Plaintiffs did not receive reasonably equivalent value for any of the Transfers, and (iii) at the time of the Transfers, each of the Plaintiffs were insolvent, became insolvent as a result of the Transfers, or were undercapitalized.

84.     The Transfers are avoidable by the Plaintiffs pursuant to section 548(a)(i)(B) of the Bankruptcy Code and applicable state law.  Pursuant to section 550(a) of the Bankruptcy

Code, the Plaintiffs are entitled to recover any avoided Transfers, or the value thereof, from the applicable Defendant, as initial transferee, the entity for whose benefit such Transfers were made, or subsequent transferee (as may be applicable), plus interest thereon to the date of payment and the costs of this action.

**THIRD CLAIM**
**(Against Elysium, Inc, Elysium AD, Jade, and PNC)**
**Avoidance of Fraudulent Transfer – 11 U.S.C. § 549**
**(Unauthorized Postpetition Transfer)**

85.     The Plaintiffs reallege and incorporate all preceding paragraphs as if fully set forth herein.

86.     The Post Commencement Date Transfers were transfers of the Plaintiffs' interest in property.

87.     The Post Commencement Date Transfers occurred after the Commencement Date.

88.     The Post Commencement Date Transfers were not authorized by the Bankruptcy Court or by the Bankruptcy Code.

89.     The Post Commencement Date Transfers constitute the unauthorized transfer of property of the Plaintiffs' chapter 11 estates.

90.     The Post Commencement Date Transfers are avoidable pursuant to section 549 of the Bankruptcy Code.

91.     In the alternative, to the extent that PNC is determined to be the initial transferee with respect to the Post Commencement Date Transfers, then such transfers to the PNC Mortgage Account or otherwise are avoidable transfers under section 549 of the Bankruptcy Code.

60091993

24

92.     In the alternative, to the extent that Jade is determined to be the initial transferee with respect to the Post Commencement Date Transfers, then such transfers to the Jade Account or otherwise are avoidable transfers under section 549 of the Bankruptcy Code.

93.     Pursuant to section 550(a) of the Bankruptcy Code, the Plaintiffs are entitled to recover the Post Commencement Date Transfers, or the value thereof, from the applicable Defendant, as initial transferee, the entity for whose benefit such transfer was made, or subsequent transferee (as may be applicable), plus interest thereon to the date of payment and the costs of this action.

**FOURTH CLAIM**
**(Against Elysium, Inc. and Elysium AD)**
**Violation of the Automatic Stay**

94.     The Plaintiffs reallege and incorporate all preceding paragraphs as if fully set forth herein.

95.     Elysium Inc.'s and Elysium AD's post-petition actions violated section 362(a)(3) of the Bankruptcy Code.

96.     The Post Commencement Date Transfers to Elysium, Inc. and Elysium AD violated both the automatic stay and otherwise applicable provisions of the Bankruptcy Code.

97.     Accordingly, the Plaintiffs are entitled to a money judgment for all amounts included in the Post Commencement Date Transfers in violation of the automatic stay as well as costs, including attorneys' fees, incurred as a result.

98.     During the course of this Adversary Proceeding, the Plaintiffs may learn through discovery or otherwise of additional post-petition transfers of Debtor property made to the Defendants to pay the Mortgage Note and other costs associated with the Penthouse.  The Plaintiffs reserve the right to amend this Complaint to include any such unauthorized transfers.

**FIFTH CLAIM**
**(Against Elysium Inc., Elysium AD, Jade, PNC, and Any Agents)**
**Injunctive Relief**

99.    The Plaintiffs reallege and incorporate all preceding paragraphs as if fully set forth herein.

100.    Pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065, the Plaintiffs seek temporary injunctive relief enjoining each of the applicable Defendants and their agents (including any closing agent or title company performing services in connection with the Sale) and assigns from transferring or otherwise disposing of any Excess Proceeds, and directing each of the Defendants and agents (including any closing agent or title company performing services in connection with the Sale) to account for the same.  The proposed injunction would remain in place during the pendency of this Adversary Proceeding or until any further order of the Court directs otherwise.

101.    Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

102.    Bankruptcy Rule 7065 provides that Federal Rule "applies in adversary proceedings, except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)."

103.    A party is entitled to injunctive relief upon a showing of (i) reasonable probability of success in the litigation and (ii) more likely than not irreparable harm absent such relief.  If a party succeeds in making those initial showings, the court then conducts an overall balancing in consideration of two additional factors: (iii) the possibility of harm to other interested persons from the grant or denial of the injunction; and (iv) the public interest.

104. As set forth in the Complaint, there is a high probability that the Plaintiffs will succeed on the merits of their claims against the Defendants.

105. Further, there is a real threat of irreparable harm if the Plaintiffs are not granted an injunction. Among other things, Elysium, Inc.'s and Elysium AD's owners and controllers have clearly taken actions to siphon funds away from the Plaintiffs to make payments toward the Mortgage Note and intend to proceed with the Sale.

106. Even after the Commencement Date, Elysium, Inc. received transfers of estate property into its accounts and there is no business justification or authorization for any such post-petition transfer(s).

107. The Uniform Fraudulent Transfer Act, as adopted and implemented by Delaware (6 Del. C. § 1307(a)(3)) and Florida (Fla. Stat. § 726.108), provide the Plaintiffs with the equitable remedy of a preliminary injunction to prevent the dissipation and/or further disposition of estate property.

108. Absent a preliminary injunction, the Defendants or their representatives will be able to transfer the Excess Proceeds out of the United States, making it much more difficult for the Plaintiffs to trace their funds to the ultimate transferee(s) of such proceeds.

109. The balance of the equities weighs in favor of granting the injunctive relief requested herein.

110. Elysium, Inc. and Elysium AD will not suffer any true prejudice as they have no legal right to the Transfers or the Post Commencement Date Transfers, and the injunction would only implicate the Excess Proceeds so that the Sale may be consummated and the Mortgage Note satisfied. Moreover, the injunction would only remain in effect until the Plaintiffs' claims against the Defendants have been adjudicated by the Court. Further, the Plaintiffs are prepared

60091993

to agree to a compressed schedule for the adjudication of this Adversary Proceeding, which will minimize any burden the Defendants may experience from such an injunction.

111. By contrast, denial of the preliminary injunction threatens the Plaintiffs' ability to recover the fraudulent Transfers and Post Commencement Date Transfers, or the value thereof.

112. The public interest would be served by granting the injunctive relief because Elysium, Inc. and Elysium AD have improperly diverted and/or received significant transfers that were made with the actual intent to hinder, delay, or defraud the Plaintiffs' creditors and have concealed those ill-gotten funds and have otherwise frustrated efforts to untangle their fraudulent scheme.  In any bankruptcy case, there is a strong public policy in favor of protecting the estate's assets and the interests of the creditor body.

113. Absent the injunctive relief requested herein, the Plaintiffs and their creditors would suffer manifest prejudice.

114. For these reasons, the Plaintiffs are entitled to a preliminary injunction enjoining the transfer or other disposition of the Excess Proceeds pending a further order of the Court.

**SIXTH CLAIM**
**(Against Elysium, Inc., Elysium AD, and Any Agents)**
**Constructive Trust**

115. The Plaintiffs reallege and incorporate all preceding paragraphs as if fully set forth herein.

116. A constructive trust is an equitable remedy to redress a wrong.  When one party, by virtue of fraudulent, unfair or unconscionable conduct, is enriched at the expense of another to whom he or she owes some duty, a constructive trust will be imposed.

117. As set forth in the Complaint, Elysium, Inc. and Elysium AD, acting on their own behalf or on behalf of their shared owner and controller, engaged in fraudulent conduct by

siphoning away Debtor property to make payments to PNC in connection with the Mortgage Note and pay the associated HOA property management fees to Jade.

118.    Each Defendant was directly, materially, and unjustly enriched to the detriment of the Plaintiffs by virtue of the fraudulent Transfers and Post Commencement Date Transfers used to pay down the Mortgage Note and pay costs associated with the Penthouse.

119.    The Plaintiffs received no benefit from the Penthouse or from any of the Transfers or Post Commencement Date Transfers.

120.    The Uniform Fraudulent Transfer Act, as adopted and implemented by Delaware (6 Del. C. § 1307(a)(3)) and Florida (Fla. Stat. § 726.108), provide the Plaintiffs with equitable remedies dependent upon the circumstances to prevent the dissipation and/or further disposition of estate property.

121.    Upon information and belief, the Sale of the Penthouse will result in Excess Proceeds and such funds will be dissipated or otherwise transferred by Elysium, Inc. or Elysium AD absent the imposition of a constructive trust.

122.    For these reasons, the Plaintiffs seek the imposition of a constructive trust with respect to the Excess Proceeds resulting from the Sale pending a further order of the Court.

**SEVENTH CLAIM**
**(Against Elysium Inc, Elysium AD, Jade, and PNC)**
**Accounting**

123.    The Plaintiffs reallege and incorporate all preceding paragraphs as if fully set forth herein.

124.    An accounting is an equitable remedy that consists of the adjustment of accounts between parties and a rendering of a judgment for the amount ascertained to be due as a result.

125.    As detailed in the Complaint, the Mortgage Note and HOA and property management fees associated with the Penthouse were paid, at least in part, by the fraudulent use of the Plaintiffs' property.

126.    The Plaintiffs are currently unable to determine the extent to which funds belonging to any of the Plaintiffs were used to pay down the Mortgage Note and to pay the HOA and property management fees associated with the Penthouse. The Plaintiffs are also currently unable to determine whether Debtor property was used to fund, in whole or in part, the down payment for the Penthouse.

127.    Upon information and belief, the Defendants possess financial books and records relating to the Penthouse, Transfers, and Post Commencement Date Transfers.

128.    The Uniform Fraudulent Transfer Act, as adopted and implemented by Delaware (6 Del. C. § 1307(a)(3)) and Florida (Fla. Stat. § 726.108), provide the Plaintiffs with equitable remedies dependent upon the circumstances to prevent the dissipation and/or further disposition of estate property.

129.    Accordingly, the Plaintiffs demand an accounting with respect to the following payments or transfers made during the four-year period leading up to the Commencement Date: (i) all transfers from any Debtor to Elysium, Inc.; (ii) all transfers from any Debtor to Elysium AD; (iii) all transfers or payments to fund the down payment for the Penthouse; (iv) all payments made to PNC with respect to the Mortgage Note; and (v) all payments to Jade with respect to the HOA, property management fees, or other costs associated with the Penthouse.

60091993

30

## EIGHTH CLAIM
### (Against Elysium, Inc. and Elysium AD)
### Unjust Enrichment

130. The Plaintiffs reallege and incorporate all preceding paragraphs as if fully set forth herein.

131. In the alternative, the Plaintiffs assert claims for unjust enrichment against Elysium, Inc. and Elysium AD.

132. Elysium, Inc. and/or Elysium AD unjustly retained or otherwise used Debtor property to pay down the Mortgage Note and pay the associated HOA and property management fees to Jade.

133. The Plaintiffs received no benefit from the Penthouse or from any of the transfers of their funds used to make payments pay the Mortgage Note.

134. There is no justification for the Transfers and Post Commencement Date Transfers, which were the product of self-dealing and other misconduct and are not supported by reasonably equivalent value.

135. Accordingly, Elysium Inc. and/or Elysium AD were unjustly enriched at the Plaintiffs' expense.

136. It would be inequitable for Elysium Inc. and Elysium AD to retain the Excess Proceeds resulting from the sale of the Penthouse under such circumstances.  The Plaintiffs are entitled to an award of damages resulting from the unjust enrichment of Elysium, Inc. and Elysium AD in an amount to be determined at trial.

## RESERVATION OF RIGHTS

137. During the course of this Adversary Proceeding, the Plaintiffs may learn through discovery or otherwise of additional transfers made to the Defendants prior to the Commencement Date in connection with funding the down payment for the Penthouse, payments

60091993

31

on the Mortgage Note, or payments relating to other costs associated with the Penthouse.  The Plaintiffs reserve the right to amend this Complaint to include, without limitation: (i) further information regarding the Transfers; (ii) transfers of Debtor funds to make the down payment for the Penthouse; (iii) additional transfers of Debtor funds used to pay down the Mortgage Note and/or pay other costs associated with the Penthouse; (iv) additional defendants; and/or (v) additional causes of action (collectively, the "**Amendments**") that may become known to the Plaintiffs at any time during this Adversary Proceeding, through formal discovery or otherwise. Any such Amendments shall relate back to this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that the Court enter judgment as follows:

a.     Avoiding the Transfers pursuant to section 548 of the Bankruptcy Code, sections 1304 and 1305 of the Delaware Code, and/or Florida statute 726.105;

b.     Recovery of the avoided Transfers, or the value thereof, from the applicable Defendants, as initial transferee, the entity for whose benefit such transfer was made, or subsequent transferee (as may be applicable), plus interest thereon to the date of payment and the costs of this action, pursuant to section 550(a) of the Bankruptcy Code, section 1307 of the Delaware Code, and/or Florida statute 726.108;

c.     Avoiding the Post Commencement Date Transfers pursuant to section 549 of the Bankruptcy Code;

d.      Recovery of the avoided Post Commencement Date Transfers, or the value thereof, from the applicable Defendant, as initial transferee, the entity for whose benefit such transfer was made, or subsequent transferee (as may be applicable), plus interest thereon to the date of payment and the costs of this action, pursuant to section 550(a) of the Bankruptcy Code;

60091993

e. Holding that Defendants Elysium, Inc. and Elysium AD violated the automatic stay by causing the Post Commencement Date Transfers to be made;

f. Entering an injunction prohibiting and enjoining each or any of the Defendants or their respective representatives or agents (including any closing agent or title company involved in the Sale) from transferring or otherwise disposing of any Excess Proceeds pending further order of the Court;

g. Imposing a constructive trust with respect to the Excess Proceeds resulting from the Sale pending a further order of the Court;

h. Requiring the Defendants, as may be applicable, to perform an accounting of (i) all transfers from any Debtor to Elysium, Inc.; (ii) all transfers from any Debtor to Elysium AD; (iii) any transfers or payments for the down payment on the Penthouse; (iv) all payments made to PNC with respect to the Mortgage Note; and (v) all payments to Jade with respect to the HOA, property management fees, or other costs associated with the Penthouse;

i. Declaring that Defendants Elysium, Inc. and Elysium AD were unjustly enriched to the detriment of the Plaintiffs and awarding the Plaintiffs damages in an amount to be determined at trial;

j. Awarding reasonable attorneys' fees and costs;

k. Awarding pre- and post-judgment interest; and

l. Granting such additional relief as the Court deems just and equitable.

[*Signature page follows*]

60091993

Dated: May 22, 2026

/s/ *Michael S. Neiburg*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (No. 2847)
Sean T. Greecher (No. 4484)
Michael S. Neiburg (No. 5275)
Allison S. Mielke (No. 5934)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Email: rbrady@ycst.com
       sgreecher@ycst.com
       mneiburg@ycst.com
       amielke@ycst.com
       jkochenash@ycst.com

*Counsel to the Plaintiffs*

60091993